NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARY M. DAVID, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED CONTINENTAL HOLDINGS, INC. and UNITED AIRLINES, INC.,<br><br>Defendants. | Case: 2:15-cv-01926-SDW-LDW<br><br>**OPINION**<br><br>November 24, 2015 |

**WIGENTON**, District Judge.

Before this Court is Defendants United Continental Holdings, Inc. and United Airlines, Inc.'s (collectively "United" or "Defendants"), Motion to Dismiss Plaintiff Cary M. David's ("David" or "Plaintiff") Class Action Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), and Plaintiff's Motion to Strike the Declarations of David Cronin and Craig Norwood. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, United's Motion to Dismiss is **GRANTED**. Plaintiff's Motion to Strike is **DENIED**.

**I. BACKGROUND**

  **A. The Parties**

1

Plaintiff Cary M. David is a citizen of the state of New Jersey. (Compl. ¶ 5.) Plaintiff brings this action on behalf of a putative nationwide class and a New Jersey sub-class of consumers who purchased either in-flight DirecTV ("DirecTV"), or WiFi services on an aircraft with a DirecTV satellite connection ("WiFi") (collectively, "Services")[1] for use on United flights that flew outside the continental United States from January 1, 2012 through and including the date a judgment is entered in this action. (Compl. ¶¶ 1, 5, 16; Dkt. No. 18.) United is incorporated under Delaware law, with headquarters in Chicago, Illinois. (Compl. ¶ 6.) United operates a major airline, United Airlines, which flies domestically and internationally. (*Id.*)

### B. Factual Allegations

DirecTV and WiFi are streamed to United aircrafts equipped with DirecTV through a satellite connection. (Compl. ¶ 8.) Passengers pay a fee in order to use in-flight DirecTV and/or WiFi. (*Id.* ¶ 9.) The fee for DirecTV on flights totaling two hours in duration or less is $4.99. (*Id.*) The fee for DirecTV on flights over two hours in duration is $7.99. (*Id.*) The fee for WiFi service ranges from $4.95 to $49.00 depending on the type of device used and the duration of the flight. (*Id.* ¶ 10.) United's website states that "aircraft equipped with DirecTV[] will only have satellite coverage within the continental U.S.," and that on "aircraft equipped with DirecTV[,] WiFi access is limited to the continental United States." (*Id.* ¶ 12.) Although Plaintiff acknowledges United's website disclosure, Plaintiff claims that this information is not disclosed to passengers who purchase DirecTV or WiFi *on-board* the aircraft at the time of purchase. (*Id.* ¶ 14.) Rather, Plaintiff asserts that "it is not until after the purchase that the consumer learns he will not receive some or all of the service that has been paid for." (*Id.*)

---

[1] The Services are paid for by passengers through a point of sale terminal at a monitor located on the back of every seat aboard the aircraft, by swiping a credit card and authorizing the purchase. (Compl. ¶ 6.)

On February 21, 2015, David purchased in-flight DirecTV from United while on-board United Flight 1142 from San Juan, Puerto Rico to Newark, New Jersey. (*Id.* ¶ 5.) Plaintiff states that "throughout the representative Flight . . . United advertised to passengers via the TV screen to "SWIPE NOW" to receive over 100 channels of DirecTV." (Dkt. No. 18.)  According to Plaintiff, "[a]t no time before or during the process of purchasing DirecTV service was Plaintiff informed that the DirecTV service Plaintiff purchased would not work during the flight." (*Id.*)  For a flight of over 4 hours, substantially all of which was over water, Plaintiff was able to use DirecTV for approximately 10 minutes. (*Id.*)  Plaintiff states that "United sold DirecTV access to Plaintiff despite the fact, known to United and not to Plaintiff that DirecTV would not work." (*Id.*) According to Plaintiff, United's failure to disclose to on-board consumers that DirecTV and/or WiFi would work only over the continental United States is a deceptive commercial practice meant "to induce passengers to swipe their credit card in-flight, knowing that the services passengers thought they were purchasing were unavailable."[2] (*Id.* ¶ 15; Dkt. No. 18.)

United denies having a deceptive practice designed to charge passengers for in-flight services prior to disclosing the limitation of those services. (Dkt. No. 11.)  Rather, United explains that Plaintiff's Complaint "is based on a false premise: that United does not disclose to on-board passengers that its in-flight DirecTV and Wi-Fi services are limited to the continental United States." (*Id.*)  United points out that "Plaintiff does not quote the language displayed on the seat-back monitor in full, nor does [Plaintiff] attach the actual offers by United" on which the claim is based. (*Id.*)  United presently submits the DirecTV and Wi-Fi offers that are displayed on the

---

[2] United notes Plaintiff's concession that she did not purchase WiFi onboard, so Plaintiff is unable to set forth any plausible claims with respect to the purchase of WiFi.  (*See* Pl.'s Opp. 17.)

seatback monitor *before* a passenger confirms his or her purchase.[3] (*Id.*; *see* Ex. A, Decl. of David Cronin at Ex. 1; *see* Ex. B., Decl. of Craig Norwood at Ex. 1-2.)

On March 13, 2015, Plaintiff filed a four count Class Action Complaint against United alleging: (1) consumer fraud (Count I); (2) breach of contract (Count II); (3) unjust enrichment (Count III); and (4) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq.* (Count IV)[4] (Compl. ¶¶ 28-49.) On May 1, 2015, United filed a Motion to Dismiss all counts of Plaintiff's complaint pursuant to Rule 12(b)(6). (Dkt. No. 11.)  On June 10, 2015, Plaintiff filed opposition to United's Motion to Dismiss and a Motion to Strike the Declarations of David Cronin and Craig Norwood. (Dkt. Nos. 18-19.)  On July 6, 2015, United filed its reply in further support of its motion to dismiss and its opposition to Plaintiff's Motion to Strike. (Dkt. Nos. 24-25.)  On July 13, 2015, Plaintiff filed its reply to the Motion to Strike. (Dkt. No. 28.)

## II. LEGAL STANDARD

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. County of Allegheny*, 515

---

[3] United's DirecTV offer includes the following language *before* a passenger confirms his or her purchase: "Note: Live DIRECTV programming is not available while the aircraft is outside of the continental United States." (*See* Ex. A, Decl. of David Cronin at Ex. 1.) Likewise, United's Wi-Fi offer includes the following language before a passenger confirms his or her purchase: "Wi-Fi service is available over the continental U.S." (*See* Ex. B., Decl. of Craig Norwood at Ex. 1-2.).

[4] Plaintiff asserts Count I on behalf of the nationwide class, Counts II and III on behalf of the nationwide class and the New Jersey sub-class, and Count IV on behalf of the New Jersey sub-class.

F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## III. DISCUSSION

Plaintiff's Complaint is based on the premise that United fails to disclose to passengers that its in-flight DirecTV and Wi-Fi services are limited to the continental United States. Plaintiff's claims fall into two broad categories: (1) contractual claims: breach of contract (Count II); and (2) extra-contractual claims: consumer fraud and violation of the NJCFA (Counts I and IV), and unjust enrichment (Count III). In the circumstances presented here, the Airline Deregulation Act preempts all of Plaintiff's claims.

*Preemption under the Airline Deregulation Act*

Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, state laws that " 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824)). Hence, "when the mandates of federal law and state law are not consistent, the state law must yield." *Feldman v. Lederle Lab.*, 125 N.J. 117, 133 (1991), *cert. denied*, 505 U.S. 1219 (1992).

In 1978, Congress enacted the Airline Deregulation Act, 49 U.S.C. § 40101, et seq. (the "ADA") based on its conclusion that " 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation services[.]' " *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). As a result, the ADA sets forth that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1); *Gordon v. United Continental Holding, Inc.*, 73 F. Supp. 3d 472, 479-80 (D.N.J. Sept. 3, 2014).

The Supreme Court first considered the scope of preemption under the ADA in *Morales*. It noted that Congress included a preemptive clause within the statute "to ensure that the States would not undo federal deregulation with regulation of their own." *Id.* at 378. In the Court's view, the term "relating to" not only prohibited states from "prescribing rates, routes or services" but also from taking any enforcement actions having a connection with or reference to airline 'rates, routes, or services' whether through laws "specifically addressed to the airline industry" or through more general statutes. *Id.* at 384. Applying these principles, the Court held that the ADA preempted the specific application of general state consumer protection statutes to airline fare advertising.

6

The Court affirmed the breadth of the ADA's preemptive sweep in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995). However, it carved out a limited exception to ADA preemption for contractual claims against airlines, even when related to rates, routes, or services:

> The ADA's preemption clause . . . stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes ***confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.***

*Wolens*, 513 U.S. at 232-33 (emphasis added); *See Gordon,* 2014 WL 4354067, at *4 (finding that the ADA does not preempt self-imposed contractual obligations).

### *DirecTV and Wi-Fi are "Services" under the ADA*

To resolve the preemption issue, this Court must determine whether the sale of DirecTV and WiFi "relate[s] to a price, route, or service of an air carrier." *See* 49 U.S.C. § 41713(b)(1). Plaintiff seeks to avoid preemption by arguing that in-flight DirecTV and WiFi do not qualify as "services" under the ADA's narrow definition of "services."[5] (Pl.'s Opp. 11.) Contrary to Plaintiff's position, this district has adopted a broad definition of "services."[6] Further, the Civil Aeronautics Board, charged with implementing the ADA's preemption provision, "conclude[d] that preemption extends to all of the economic factors that go into the provision of the quid pro

---

[5] The narrow definition of services encompasses "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail, but not the provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities. *Panitch v. Cont'l Airlines*, No. 06-3611, 2008 WL 906240, at *4 (D.N.J. Mar. 31, 2008).

[6] *See Panitch*, 2008 WL 906340, at *5 (stating that "this Court follows the reasoning of the First, Second, Fourth, Fifth, Seventh, and Eleventh Circuits, and adopts a broad definition of "service"); *see e.g., Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (finding that the "narrow" definition of services under the ADA "is inconsistent with the Supreme Court's recent decision in *Rowe v. N.H. Motor Transport Ass'n*, 552 U.S. 364 (2008)," which "necessarily defined 'service' to extend beyond prices, schedules, origins, and destinations").

7

quo for passenger's [sic] fare, including…*entertainment*." 44 Fed. Reg. 9948, 9951 (1979) (emphasis added). As a result, this Court finds that the DirecTV and WiFi at issue are "services" under the ADA. Thus, the ADA is applicable in deciding the instant matter. *See Rosen*, 430 N.J. Super. 97, 106-07 (App. Div. 2013) (holding that plaintiff's claims were preempted because "the provision of an airline entertainment headset falls squarely within th[e] definition" of "service").

*Contractual Claim*

### *Count II: Breach of Contract* [7]

Plaintiff alleges that "[b]y purchasing DirecTV or WiFi service from Defendants, Plaintiff . . . entered into contracts with Defendants" and the failure to provide those services constitutes a breach. (Compl. ¶¶ 32, 34.) Defendants counter that the Applicable Contracts specifically provided that these services would be available only over the continental United States.

In *Gordon*, this Court noted that "the [Supreme] Court limited its breach-of-contract exception to actions confined to the terms of the parties' bargain." 2014 WL 4354067, at *4; *see also Blackner v. Cont'l Airlines, Inc.*, 709 A.2d 258, 260 (App. Div. 1998) (holding that the breach of contract claim was preempted because it "falls on the prohibited side of the line drawn in Wolens"). Here, United's self-imposed undertaking is that it will provide DirecTV or Wi-Fi

---

[7] In its motion to dismiss, United submitted the declarations of David Cronin and Craig Norwood, which attached the contracts that United offered to Plaintiff for the purchase of DirecTV or WiFi (the "Applicable Contracts") on her flight. (*See* Dkt. No. 11-2, 11-3.) In response, Plaintiff filed the Motion to Strike the Declarations of David Cronin and Craig Norwood on the basis that the declarations contain factual assertions not made in the Complaint. This Court will deny Plaintiff's Motion to Strike because the declarations were made based upon the employees' personal knowledge and the Applicable Contracts are therefore authentic.

The disclosures within the Applicable Contracts that passengers view prior to purchasing DirecTV or WiFi may properly be considered on this motion: "What the rule [allowing considering of documents attached to a Rule 12(b)(6) motion] seeks to prevent is the situation in which," as Plaintiff attempts to do here, "a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent." *In* re *Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

service *over the continental United States* in exchange for payment by the passenger. *See* Cronin Decl. at Ex. 1 ("DirecTV programming is not available while the aircraft is outside of the continental United States"); Norwood Decl. at Exs. 1–2 ("Wi-Fi service is available over the continental U.S."). Instead of seeking to enforce Defendant's obligation to provide those services over the continental U.S., Plaintiff requests this Court to find that United breaches its contracts when it acts precisely as it promises, by providing DirecTV and Wi-Fi services over the continental U.S. Therefore, this Court finds that Plaintiff's breach of contract claim is preempted.

*Extra-Contractual Claims*

### *Counts I and IV: Consumer Fraud and NJCFA*

Plaintiff asserts claims for consumer fraud and violation of the NJCFA in Counts I and IV of her Complaint. (Compl. ¶¶ 28-49.) These claims are preempted by the ADA. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995) (finding that the ADA preempted the use of Illinois' general consumer protection statute to challenge an airline's devaluation of frequent flyer earned miles); *see also Gordon v. United Continental Holding, Inc.*, 73 F. Supp. 3d 472, 479-80 (D.N.J. Sept. 3, 2014); *see also Flaster/Greenberg P.C. v. Brendan Airways, LLC*, 2009 U.S. Dist. WL 1652156, at *6-7 (finding that the ADA leaves no "room for a consumer fraud claim against an airline" and dismissing NJCFA claim with prejudice); *Vail v. Pan Am Corp.*, 260 N.J. Super. 292, 294, 296 (App. Div. 1992). Consequently, Counts I and IV are preempted by the ADA and are therefore dismissed.

### *Count III: Unjust Enrichment*

It is well-settled that claims against airlines for unjust enrichment fall squarely within the ADA's preemption clause. *Gordon*, 73 F. Supp. at 480; *Blackner*, 311 N.J. Super. at 13; *Buck v.*

*Am. Airlines, Inc.,* 476 F.3d 29, 31, 38 (1st Cir. 2007).  Accordingly, Count III is preempted by the ADA and is therefore dismissed.

**IV. CONCLUSION**

       For the reasons set forth above, United's Motion to Dismiss is **GRANTED**.  Because the ADA preempts all of Plaintiff's claims, amendment would be futile.  Plaintiff's Motion to Strike is **DENIED**.  A corresponding Order accompanies this Opinion.

                                                    s/ Susan D. Wigenton, U.S.D.J.

Orig:        Clerk
cc:          Leda D. Wettre, U.S.M.J.
                Parties